(319 P.3d 571)

No. 109,123

STATE OF KANSAS, *Appellee*, v. ANTHONY C. HANKINS, *Appellant*.

Opinion filed February 21, 2014.

*Sarah Morrison Rapelye*, of The Law Office of Stacey J. Lett & Associates LLC, of Leawood, for appellant.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., Atcheson, J., and ERNEST L. JOHNSON, District Judge Retired, assigned.

JOHNSON, J.: Anthony C. Hankins appeals the district court's denial of his motion to correct an illegal sentence. He asserts that the district court incorrectly included in his criminal history an Oklahoma deferred sentence that was not actually a conviction. We affirm the rulings of the district court.

FACTUAL AND PROCEDURAL HISTORY

On July 2, 2010, Hankins, dressed for combat and wielding a rifle, burst into Saints Bar and Grill. He threatened to do bodily harm to his victims and robbed the business of around $1,500. The police stopped Hankins' vehicle as he was making his getaway. However, before they could take Hankins into custody, he sped away. Hankins then crashed his vehicle. The police arrested him and, amidst other evidence of the crime, found around $1,500 in

cash in his vehicle. Saints had a security system that captured the robbery on video. The proprietor of Saints recognized the robber as being similar in appearance to the person he saw on the video security system burglarizing Saints a month before the robbery.

The State charged Hankins with four felonies. He attempted to negotiate a plea bargain that included some concessions for probation. When that failed, Hankins, contrary to the advice of his attorney, decided to plead guilty without benefit of a plea bargain. On March 25, 2011, Hankins pled guilty as charged to one count of aggravated robbery and two counts of aggravated assault for the offenses he committed on July 2, 2010, and one count of burglary for the offense of June 4, 2010. The presentence investigation (PSI) report listed three prior convictions: (1) possession of a firearm on school property, an adult nonperson felony; (2) giving a worthless check, an adult nonperson misdemeanor; and (3) possession of stolen property, an adult nonperson misdemeanor. The felony conviction was from Oklahoma. The PSI suggested that Hankins' criminal history score was G.

The district court sentenced Hankins on May 19, 2011. At the outset of the hearing, the district court recited the possible sentences indicated in the PSI report for each count. For the primary offense, aggravated robbery, a level 3 person felony, using a criminal history score of G, the aggravated sentence was 77 months, the standard sentence was 72 months, and the mitigated sentence was 68 months. For the three additional offenses, each a level 7 felony, applying a criminal history score of I, the applicable grid box provided a sentence range of 13 months, 12 months, or 11 months. The district court pointed out that this was a "presumptive prison" case.

The district court asked if anyone disagreed or had anything to add to the suggested sentencing terms from the PSI. Hankins' attorney stated that he did not disagree and had nothing to add to those findings. Hankins' attorney next responded that he knew of no reason not to proceed with sentencing. The district court then heard Hankins' comprehensive arguments for a dispositional departure to probation. Hankins' attorney argued the following points: Hankins entered his pleas as charged, without litigation,

and contrary to advice of counsel, in order to reduce the burden on the State and the witnesses; he had obtained a job and was doing well; he was not a disciplinary problem at the residential center; he was remorseful about his criminal conduct and took full responsibility for it; he used a BB gun rather than an actual firearm during the robbery; and he had a son to support. Hankins' attorney suggested that, if the court granted probation, it could put "an enormous sentence over his head." As further evidence of Hankins' commitment to minimize the State's burden, his attorney stated:

"There was an issue about that conviction in Oklahoma, whether it had actually been dismissed or if it was part of a diversion or some juvenile issues. He didn't want to challenge that either, Judge, and decided, I've been dealing with this, I want to go forward today. I think if the court takes all of that into consideration, along with everything that is been outlined in the departure motion, there is enough, there is enough to find grounds for a departure in this case."

Hankins himself made a lengthy, articulate argument for probation. He emphasized that his job allowed him to use his college education. He read supporting letters from fraternity brothers and others to the court. Hankins did not contradict his attorney's waiver of a challenge to the Oklahoma item on the PSI.

The district court found that Hankins' reasons to depart from the presumption of imprisonment were not substantial and compelling. It sentenced Hankins to a term of 68 months in prison, the mitigated sentence, on the aggravated robbery count, and 12 months in prison on each of the other counts, with the sentences ordered to run concurrently.

On June 2, 2011, Hankins' filed his Notice of Appeal of the sentence, all judgments, and all adverse rulings entered by the district court. On October 27, 2011, because of the notice of voluntary dismissal filed by Hankins, this court dismissed that appeal.

On June 25, 2012, Hankins filed a pro se motion to correct an illegal sentence alleging that the Oklahoma conviction should not have been included in his criminal history. He argued that the case there was disposed of through a special Oklahoma process called "deferred sentencing" that did not result in a conviction. Through his attorney, Hankins filed a supplemental motion to correct an illegal sentence on October 16, 2012. The State filed its response

to the motion on October 30, 2012. The State argued that Hankins waived his right to challenge the criminal history by stipulating to its accuracy. It contended that the doctrine of invited error precluded the relief Hankins requested. The State also addressed the substance of Hankins' criminal history argument. The State attached Hankins' Plea of Guilty and Summary of Facts form and the Sentencing After Previous Plea of Guilty form from the Oklahoma case. It argued that Hankins pled guilty to the offense so, under Kansas law, it constituted a conviction. The parties argued these positions at the motion hearing October 31, 2012. Interestingly, Hankins did not testify. The district court took the matters under advisement.

By written order entered November 26, 2012, the district court denied Hankins' motion. It found that Hankins had waived his right to challenge his criminal history because he stipulated to it in open court. Thus, he could not now complain about an error he had invited by the stipulation. Further, the district court found that Hankins made a strategic decision not to challenge his criminal history: "It is apparent that during sentencing the Defendant argued for leniency because he did not challenge his criminal history or add additional burdens to the prosecutor." It also found that, even if the defendant were able to challenge his criminal history score, he had failed to prove that it was incorrect. The district court stated that deferred sentence offenses from other states can be included in a defendant's criminal history where, as here, the proceeding had established the defendant's guilt but simply deferred the imposition of punishment. Hankins filed a timely notice of appeal.

## ANALYSIS

On appeal the parties offer the same arguments they made to the district court.

The court may correct an illegal sentence at any time. K.S.A. 22-3504(1). The question of whether a sentence is illegal is a question of law over which this court has unlimited review. *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). A sentence is illegal if (1) it is imposed by a court without jurisdiction; (2) it does not

conform to the applicable statutory provision, either in the character or the term of authorized punishment; or (3) it is ambiguous with respect to the time and manner in which it is to be served. 296 Kan. at 902.

### Invited Error

Hankins essentially concedes that he stipulated to his criminal history score at sentencing. He contends that his illegal sentence claim is not barred under the invited error doctrine. He argues that whether the disposition of his Oklahoma case should count as a conviction is one of law not subject to the invited error doctrine. He also argues that he could not stipulate to an incorrect application of law.

Where the parties have not stipulated to the criminal history, the district court has the power to correct an error in determining criminal history. *State v. Russell*, 36 Kan. App. 2d 396, 399, 138 P.3d 1289, *rev. denied* 282 Kan. 795 (2006). However, where a defendant invites error by stipulating to his or her criminal history, he or she generally cannot obtain a correction of the sentence under K.S.A. 22-3504. *State v. Vandervort*, 276 Kan. 164, 175-76, 72 P.3d 925 (2003); *Neal v. State*, 25 Kan. App. 2d 705, 706, 971 P.2d 748 (1998), *rev. denied* 266 Kan. 1109 (1999).

Hankins contends that *State v. Donaldson*, 35 Kan. App. 2d 540, 133 P.3d 154 (2006), makes the invited error doctrine inapplicable here. The *Donaldson* court stated: "The invited error rationale is not applicable when the erroneous information at the heart of a stipulation is within the knowledge of the court, the prosecutor, and defense counsel, but not the defendant." 35 Kan. App. 2d at 543. However, the *Donaldson* court qualified that exception by basing it on its facts, stating: "[T]he stipulation *at issue* is not to the factual existence of his prior convictions but to the classification of those prior convictions. . . . [This] involves the application of law. *As such*, no party can properly stipulate to an incorrect application of the law." (Emphasis added.) 35 Kan. App. 2d at 543-44.

The first problem with Hankins' argument is that he did stipulate to the factual existence of his prior conviction. He attempts to avoid that difficulty by arguing on appeal that he "does not challenge the

existence of the Oklahoma case listed on his presentence investigation report but challenges the classification of the Oklahoma case as a conviction for the purpose of criminal history score." However, the PSI does not list cases. It lists only convictions. Hankins is challenging the very inclusion of this item, not its classification.

Hankins has another problem in relying on a *Donaldson* exception to invited error. "[T]he invited error rationale is not applicable when the erroneous information at the heart of a stipulation is within the knowledge of the court, the prosecutor, and defense counsel, but not the defendant." 35 Kan. App. 2d at 543. Here there is no evidentiary indication that anyone other than Hankins knew that the Oklahoma conviction was part of a deferred sentence proceeding. Hankins' attorney stated: "There was an issue about that conviction in Oklahoma, whether it had actually been dismissed or if it was part of a diversion or some juvenile issues. He didn't want to challenge that either, Judge, and decided, I've been dealing with this, I want to go forward today." This supports the inference drawn by the district court that Hankins was aware of a potential challenge to the accuracy of the criminal history but intentionally chose to forgo the challenge as part of his dispositional departure strategy.

This court has recently discussed the invited error doctrine in two cases where the defendant stipulated to his criminal history score and then challenged the same after sentencing. Relying on the holding in *Donaldson*, the court in *State v. Mims*, No. 103,044, 2011 WL 4563068 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 945 (May 21, 2012), stated:

"Generally, a criminal defendant who stipulates to a criminal history score cannot later challenge the factual basis used to classify a prior conviction (*e.g.*, whether a burglary conviction should be classified as a person or nonperson felony . . .) or the factual basis used to determine the criminal history score (*e.g.*, the existence of a prior conviction)." 2011 WL 4563068, at °4.

In *State v. Madkins*, No. 104,350, 2011 WL 4031531 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 945 (May 21, 2012), a panel of this court questioned the reasoning in the *Donaldson* holding:

"While a defendant may not bind a court by a stipulation to an incorrect application of the law, a defendant may bind him or herself. *Bello*, 289 Kan. at 94, where the issue was the applicability of the rape shield statute, is a case in point. Another example is the line of cases refusing to review a jury instruction where the complaining party had sought the instruction below. See *State v. McCoy*, 34 Kan. App. 2d 185, 189-90, 116 P.3d 48, *rev. denied* 280 Kan. 988 (2005) (citing cases).

"The invited error doctrine applies to errors of law because it is based on estoppel, not on the personal knowledge of the defendant. *State v. McCarley*, 38 Kan. App. 2d 165, 175-76, 166 P.3d 418 (2007), *aff'd in part and rev'd in part* 287 Kan. 167, 195 P.3d 230 (2008). The invited error doctrine therefore applies to criminal history scores, the legal aspect of such scores notwithstanding: 'A criminal defendant who stipulates to an incorrect criminal history score cannot later complain on appeal of an illegal sentence based on that score.' *State v. Goeller*, 276 Kan. 578, Syl. ¶ 6, 77 P.3d 1272 (2003), . . . . [Defendant's] criminal history score is not properly before us." 2011 WL 4031531, at *3.

There is no need for any additional analysis of the doctrine here. The facts in this case drive the decision on invited error. The district court found that Hankins chose to forgo a challenge to the Oklahoma item on his criminal history as part of his dispositional departure strategy. The statements made by Hankins' attorney at sentencing link the decision not to challenge the history directly to the "grounds for a departure in this case." The evidence indicates that Hankins himself dictated that strategy. Hankins' attorney said that Hankins entered his pleas as charged contrary to counsel's advice. The evidence also demonstrates that Hankins is educated, articulate, and not lacking in intelligence. He spoke well for himself at sentencing. At the first, failed, plea hearing he overrode the suggestions of his attorney and the court and made an impassioned argument for probation. The district court pointed out that Hankins was getting ahead of himself since he had not yet been found guilty. Then, at the actual plea hearing, Hankins spoke for himself in challenging the factual basis the State offered to support the burglary charge. He decided that he was guilty only after a lengthy discussion. He spoke well and at length at his sentencing. This all supports the inference that, had Hankins wanted to challenge the inclusion of the Oklahoma offense in his criminal history, he would have done so.

Hankins had the statutory opportunity, and obligation, to challenge his criminal history at sentencing. If he had, the State would have had the burden of producing proof sufficient to establish the disputed conviction by a preponderance of the evidence. K.S.A. 2010 Supp. 21-4715(c). He chose not to challenge his criminal history at sentencing. The decision of the district court, that the invited error doctrine bars Hankins from now complaining of the criminal history score he chose not to challenge at sentencing, is supported by substantial competent evidence.

In his concurrence Judge Atcheson sets out his many disagreements with our invited error analysis. We mention only one of those specifically although we, obviously, reject them all. We believe his construction of the language amended into K.S.A. 21-4715(c) in 2009 is far too expansive. It appears to us that the amendment simply shifts the burden of proof on criminal history from the State to a defendant who challenges, in a subsequent case, a criminal history established in a prior case. We do not believe that this language also, in the process, legislatively negates the application of the doctrine of invited error when considering a defendant's postsentencing challenge to a criminal history established in the same case. Such a construction also makes the first two sentences of K.S.A. 2010 Supp. 21-4715(c) surplusage. ("Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error.") In construing statutory provisions, we should glean the legislative purpose and intent from the language used, give effect to that purpose and intent, refrain from adding something not readily found in it, and avoid a reading that makes another part of the statute surplusage. See *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009); *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004).

Even if Hankins' appeal was not barred, he still would not prevail. In light of Judge Atcheson's disagreements and in the interests of judicial economy we will address Hankins' argument on the merits.

*Hankins' Oklahoma Guilty Plea Was Properly Scored as a Conviction*

The documentary evidence confirms what Hankins belatedly claims: he received a deferred sentence in the Oklahoma case from 2000 listed in his criminal history. The State does not dispute this. Hankins then argues that, under Oklahoma law, that court never entered a judgment of guilt so it should not count as a conviction. He argues that it is akin to a Kansas diversion and not includable in his criminal history.

This issue involves a matter of statutory interpretation. Therefore this court's scope of review is unlimited. *State v. Vontress*, 266 Kan. 248, 259, 970 P.2d 42 (1998).

Unlike Kansas, the Oklahoma Legislature has empowered its courts to determine whether to impose or defer the formal entry of judgment of guilt and sentence. The pertinent portions of the statute, Okla. Stat. tit. 22 § 991c (2011), on deferred sentences in effect at the time of Hankins' plea provide:

"A. Upon a verdict or plea of guilty or upon a plea of nolo contendere, but before a judgment of guilt, the court may, without entering a judgment of guilt and with the consent of the defendant, defer further proceedings upon the specific conditions prescribed by the court not to exceed a ten-year period.

. . . .

"C. Upon completion of the conditions of the deferred judgment, and upon a finding by the court that the conditions have been met and all fines, fees, and monetary assessments have been paid as ordered, the defendant shall be discharged without a court judgment of guilt, and the court shall order the verdict or plea of guilty or plea of nolo contendere to be expunged from the record and the charge shall be dismissed with prejudice to any further action.

. . . .

"E. Upon violation of any condition of the deferred judgment, the court may enter a judgment of guilt and proceed as provided in Section 991a of this title or may modify any condition imposed."

Before an Oklahoma court can even defer a sentence, then, there must be court acceptance of a guilty verdict, guilty plea, or nolo contendere plea. The Oklahoma Plea of Guilty and Summary of Facts document produced by the State shows that Hankins pled guilty to a charge of possession of a firearm on school property.

Hankins provided a written factual basis for the plea: "I had a rifle at the John Marshall baseball field." At the end of the plea document the court entered these particular findings:

"The court finds as follows:

. . . .

"C. The defendant's plea(s) of guilty is/are knowingly and voluntarily entered and accepted by the court.

. . . .

"F. The defendant is guilty as charged . . . ."

Okla. Stat. tit. 22, § 991c(A) mandates these findings as a prerequisite to a deferred sentence. Hankins, his attorney, the prosecutor, and the judge signed the document on June 28, 2000.

The parties apparently proceeded directly from the plea to sentencing. The Sentencing After Previous Plea of Guilty document confirms that Hankins was given a deferred sentence for 2 years. During that period he would be "supervised" until his conditions had been met. Hankins' sentencing document warned him that, if he violated his probation, "the sentencing date of a deferred sentence may be accelerated and judgment and sentence imposed . . . ." If the State proved a violation of probation under a deferred sentence the court could "accelerate" the sentence and remand the defendant to prison. "A hearing to accelerate a deferred sentence is not to establish criminal liability, as that has already been established by the trial at the time of the plea." *Beller v. State*, 597 P.2d 338, 340 (Okla. Crim. 1979). Hankins' deferred sentence expired on June 27, 2002. His order dismissing that case and recalling the warrant was dated January 8, 2008.

Kansas does not permit an appeal from a conviction until the judgment is final. K.S.A. 2010 Supp. 22-3601(a). To have a final judgment in a criminal case, the defendant must be convicted and sentenced. *State v. Howard*, 44 Kan. App. 2d 508, 511, 238 P.3d 752 (2010). Generally Oklahoma also requires the same finality. Okla. Stat. tit. 22, § 1051(a) (2011) provides that "[a]n appeal to the Court of Criminal Appeals may be taken by the defendant, as a matter of right *from any judgment* against him, which shall be taken as herein provided . . ." and "all appeals taken from any

*conviction* on a plea of guilty shall be taken by petition for writ of certiorari to the Court of Criminal Appeals" (Emphasis added.) Thus, under a strict construction of Oklahoma's appeal statute, an aggrieved defendant could not appeal the terms of his deferred sentence terms because, by definition, the judgment was not final. In 1994, the Oklahoma Court of Criminal Appeals considered the resulting tension between the due process right to appeal and the lack of finality in a deferred sentence. In *Gonseth v. State*, 871 P.2d 51, 54 (Okla. Crim. 1994), the court resolved that tension:

"The statute governing appeals uses the term 'judgment' when dealing with most matters. However, when dealing with the specific area of a guilty plea, it uses the word 'conviction.' 22 O.S. 1991, § 1051(a). We believe the Legislature used the word 'conviction' instead of 'judgment' in connection with guilty pleas for a reason. Even though the term is most often—and correctly—used in the strict legal sense as meaning a final judgment of the court, that is not the only definition available. *This Court noted the term in its ordinary sense could be used to designate that particular state of a criminal prosecution, when a plea of guilty is entered in open court, or a verdict of guilty is returned by a jury. See Gilmore v. State,* 3 Okl. Cr. 639, 640, 108 P. 416 (1910). Such a definition, while not widely used, is a plausible one which allows this Court to interpret § 1051 and § 991c in a manner consistent with our constitution. *Under it, while a deferment is not a conviction in the sense final judgment is entered, it is a final order* in the sense the court has the power to enforce its orders upon one who has entered a plea of guilty or nolo contendere in open court.

. . . .

"Accordingly, we hold a petitioner can appeal from a trial court's denial of a motion to withdraw a guilty plea even though the court deferred judgment and sentence. . .

. . . .

"After an Order Deferring Imposition of Sentence is entered, a defendant who so wishes can appeal the terms of probation entered as a part of the court's Order." (Emphasis added.)

We note that Hankins' sentencing form contains a notice of the right to appeal as mandated by *Gonseth.*

In Kansas our courts apply the definition of conviction that the *Gonseth* court said is "not widely used." K.S.A. 2010 Supp. 21-3110(4) provides that " '[c]onviction' includes a judgment of guilt entered upon a plea of guilty." The legislature's use of the word "includes" means that things other than such a judgment of guilt can constitute a conviction. In *State v. Holmes,* 222 Kan. 212, 214,

563 P.2d 480 (1977), our Supreme Court made it clear that a conviction occurs when guilt is determined, not when sentence is later imposed and the judgment becomes final. There the defendant appealed his conviction of possession of a firearm by a convicted felon, arguing that the statute did not apply to him. Before committing the firearm offense, he had pled nolo contendere to attempted aggravated robbery, but he had not yet been sentenced. Our Supreme Court answered the question of when a conviction occurred, stating: "It is clear to us that once the statutory procedure has been complied with and the plea of guilty or *nolo contendere* has been accepted and a finding of guilty entered thereon, the defendant stands convicted of the offense." 222 Kan. at 214. The court upheld the conviction, holding that "[t]o achieve the legislative purpose K.S.A. 21-4204(1)(b) should be held applicable following a conviction of a felony although sentence has not yet been imposed." 222 Kan. at 215.

Our Supreme Court has referred to the jury's verdict of guilt as a conviction for over a century. See, *e.g.*, *State v. Frazier*, 54 Kan. 719, 39 P. 819 (1895) ("That he attempted to violate the person of this little girl appears perfectly clear from the evidence, and he has been convicted by two juries."); *State v. Holt*, 298 Kan. 469, 313 P.3d 826 (2013) ("In 1994, Holt was convicted by a jury of more than 60 offenses, including two counts of first-degree murder that arose out of a series of burglaries and related offenses in Junction City, Kansas.").

Our legislature refers to any determination of guilt as a conviction, whether by plea or verdict. For example, under the Kansas Sentencing Guidelines Act, K.S.A. 2010 Supp. 21-4714(a) provides: "The court shall order the preparation of the presentence investigation report by the court services officer as soon as possible after conviction of the defendant." For another, K.S.A. 21-4716 concerns departure sentencing and refers to the offense for sentencing as "the current crime of conviction." K.S.A. 22-3414(3) concerns jury instructions and provides, in part: "In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime as provided in subsection (2) of K.S.A. 21-3107, and amendments thereto, the judge shall instruct

the jury as to the crime charged and any such lesser included crime."

For a last example, the Kansas capital murder statute provides in part:

"(a) If a defendant is charged with capital murder, the county or district attorney shall file written notice if such attorney intends, upon *conviction* of the defendant, to request a separate sentencing proceeding to determine whether the defendant should be sentenced to death. . . .

"(b) Except as provided in K.S.A. 21-4622 and 21-4623, and amendments thereto, upon *conviction* of a defendant of capital murder, the court, upon motion of the county or district attorney, shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to death." (Emphasis added.) K.S.A. 2010 Supp. 21-4624.

In Kansas a conviction occurs when the court finds or accepts a finding of guilt. The final judgment and sentencing then follow.

Kansas law applies when determining whether Hankins' Oklahoma guilty plea and deferred sentence are the equivalent of a conviction for criminal history purposes. That is true even if the foreign state does not treat the disposition as a conviction. See *State v. Pollard*, 273 Kan. 706, 712, 44 P.3d 1261 (2002) (a Missouri suspended imposition of a felony sentence properly served as the predicate conviction for a subsequent Kansas charge of criminal possession of a firearm). See also *State v. Siesener*, 35 Kan. App. 2d 649, 137 P.3d 498 (2005) (criminal history properly included a Missouri offense since defendant plead guilty, although he received a suspended imposition of sentence); *State v. Macias*, 30 Kan. App. 2d 79, 39 P.3d 85 (2002) (criminal history properly included a deferred sentence under Texas law where defendant's factual guilt was established in the foreign state); *State v. Hodgden*, 29 Kan. App. 2d 36, Syl. ¶ 6, 25 P.3d 138 (2001) (criminal history properly included a judgment of conviction later set aside under Alaska law), *rev. denied* 271 Kan 1040 (2001); *State v. Presha*, 27 Kan. App. 2d 645, 649, 8 P.3d 14 (2000) (criminal history properly included a Florida juvenile adjudication that, had it occurred in Kansas, was scorable). "What matters . . . is whether the foreign state concluded the defendant did the crime[], not whether he or she ultimately had to do the time." *Macias*, 30 Kan. App. 2d at 83.

The court's analysis in *Macias* is relevant here. That court held that a Texas deferred adjudication counted as a prior conviction under Kansas law. 30 Kan. App. 2d at 83. Similar to the Oklahoma statute, Texas law empowered a judge who had accepted a guilty or nolo contendere plea to defer further proceedings, without a final adjudication of guilt and sentence, and place the defendant on community supervision. If the defendant violated the terms of supervision the defendant was arrested. The court would then hold a hearing to determine whether the supervision violation occurred. If so, the court "proceeds with an adjudication of guilt on the original charge," and sentencing was conducted "as if the adjudication of guilt had not been deferred." Tex. Code Crim. Proc. Ann. § 42.12(5)(b) (2006). If a defendant successfully completes community supervision, the judge must dismiss the proceedings against the defendant and discharge him or her. The Texas statute allows consideration of a deferred adjudication of guilt when determining the penalty for the conviction of a later offense. Tex. Code Crim. Proc. Ann. § 42.12(5)(c)(1).

The *Macias* court found it significant that the Texas procedure only allowed adjudication after the entry of a guilty or nolo contendere plea, or after a trial where guilt was demonstrated. Similarly, the Oklahoma statute only allows for a deferred sentence after entry of a guilty verdict, guilty plea, or nolo contendere plea. Okla. Stat. tit. 22, § 991c(A) (2011). The *Macias* court found that, under the Texas procedure, Macias' guilt was demonstrated to the satisfaction of the Texas court, and nothing but formal adjudication remained. That court also noted that the Kansas Sentencing Guidelines seek to inhibit a defendant's refusal to renounce criminal behavior by taking all prior established criminal behavior into consideration for sentencing. It does not "matter what lenience another state may wish to show, once we are satisfied that a defendant's actual guilt was established in a foreign state, that prior crime will count in Kansas." *Macias*, 30 Kan. App. 2d at 83.

K.S.A. 21-4711(e) requires that an offender's out-of-state convictions and juvenile adjudications be used in classifying the offender's criminal history. K.S.A. 2010 Supp. 21-4710(d)(2) requires

that an offender's criminal history classification contain all prior adult felony convictions, including expungements.

Here, Hankins' Oklahoma case was properly included in his criminal history even though Oklahoma eventually dismissed the case and expunged that record. He pled guilty, he gave the factual basis for that plea, the court accepted his plea, and the court found him guilty. Under *Beller*, Hankins' plea established his guilt ("criminal liability") under Oklahoma law. Had the Oklahoma court subsequently found that Hankins violated the terms of the deferment the court could have imposed sentence as if it had not been deferred. Moreover, as the *Gonseth* court decided, even Oklahoma law treats a deferred sentence as a "conviction" such that the defendant has the right to appeal the terms of the deferred sentence.

Hankins' attempt to liken his Oklahoma deferred sentence to a Kansas diversion does not help him. The differences are too substantial. Here the State determines who goes into diversion, not the court. The defendant does not plead guilty as a precondition to a grant of diversion.

Hankins pled guilty in Oklahoma. His factual guilt was established there. The ultimate disposition of the case there does not control how Kansas treats the disposition when determining criminal history on a subsequent offense. Even if Hankins had properly preserved this issue for appeal, we still affirm the district court because it was correct in its conclusion that Hankins' Oklahoma deferred sentence constitutes a conviction for purposes of determining his criminal history under Kansas law.

Affirmed.

\* \* \*

ATCHESON, J., concurring:

## I. INTRODUCTION

I reluctantly concur in the majority's conclusion that, on the merits, the Johnson County District Court correctly relied on the felony prosecution of Defendant Anthony Hankins in Oklahoma to establish his criminal history score in this case, even though he was never adjudged guilty in Oklahoma and the prosecution was ulti-

mately dismissed. I do so based on the reasoning of a panel of this court in *State v. Macias*, 30 Kan. App. 2d 79, 83, 39 P.3d 85, *rev. denied* 273 Kan. 1038 (2002), and endorsed a few months later by the Kansas Supreme Court in *State v. Pollard*, 273 Kan. 706, 713-14, 44 P.3d 1261 (2002). But *Macias* failed to discuss or even cite the statutory definition of "conviction" in the Kansas Criminal Code—a definition that would seem to favor a different result in that case and this one. The *Pollard* court left that apparent flaw unexplored. I also have grave reservations about the invited error rationale the majority principally employs and do not join in that portion of the decision.

The only issue on appeal is how the Kansas courts should treat Hankins' deferred sentencing in Oklahoma for illegal possession of a firearm in determining his criminal history. A defendant's criminal history is important because the more extensive that history the longer the presumptive sentence he or she faces. Under the Kansas sentencing scheme, some convictions are counted and others not. If a defendant has convictions from another jurisdiction, the district court must determine whether those convictions would be counted under Kansas law. See *State v. Siesener*, 35 Kan. App. 2d 649, 650-52, 137 P.3d 498 (2005), *rev. denied* 281 Kan. 1381 (2006); *Macias*, 30 Kan. App. 2d at 82. That can get tricky in a couple of respects.[1]

[1]In the context of Eighth Amendment jurisprudence, the United States Supreme Court has noted the difficulty in comparing criminal offenses and the concomitant punishments from one state with offenses and punishments from another state. See *Rummel v. Estelle*, 445 U.S. 263, 279-80, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980).

First, the out-of-state conviction may be for a crime that has no precise analog under the Kansas Criminal Code, so it may be classified for criminal history purposes, in part, like a comparable Kansas offense. See *State v. Barajas*, 43 Kan. App. 2d 639, 642, 230 P.3d 784 (2010). Hankins doesn't make that argument here.[2] But he does argue that because of the way Oklahoma handled the charge against him, it didn't result in a conviction that should be included in his criminal history. And that's a second way dealing with out-of-state criminal cases turns complicated. Different states

have different processes for giving deserving criminal defendants breaks that may avoid judgments of conviction on charges. Hankins says the Oklahoma case shouldn't be included in his criminal history for that reason.

[2]The foreign jurisdiction's classification of the offense as a felony or misdemeanor carries over to the Kansas sentencing regimen. K.S.A. 2013 Supp. 21-6811(e).The Kansas courts then determine whether an out-of-state felony conviction should be considered a person offense or a nonperson offense based on a comparison with "comparable" Kansas crimes. K.S.A. 2013 Supp. 21-6811(e). In general, felonies more negatively affect a defendant's criminal history for sentencing purposes than do misdemeanors, and person offenses are similarly worse than nonperson offenses.

As outlined in the majority opinion, under Oklahoma's deferred sentencing procedure, a defendant pleads guilty or no contest to a charge and the trial court imposes certain conditions on the individual. If the defendant satisfies those conditions, a process that can take years, the case is dismissed. The defendant has no conviction under Oklahoma law. Perhaps more significantly for Hankins and this case, the Oklahoma statute provides that the trial court does not enter a judgment of guilt unless the defendant fails to satisfy the conditions. Okla. Stat. tit. 22, § 991c (2011). Hankins successfully completed the Oklahoma deferred sentencing process on the firearms charge. So he was never adjudged guilty, and the case was dismissed with prejudice. No judgment was ever entered against Hankins in the Oklahoma prosecution.

The majority concludes that the invited error doctrine precludes this court from considering Hankins' challenge. The majority then considers the merits of the argument and finds the Oklahoma prosecution ought to be included in Hankins' criminal history for sentencing in this case. I take up the issues in the reverse order. Given Kansas Supreme Court authority on establishing criminal histories, I concur with the majority on the merits. But I suggest a strong statutory argument against counting the Oklahoma proceeding. I then explain my disagreement with the majority's use of invited error to reject Hankins' appeal.

## II. Precedent Favors Including Oklahoma Proceeding in Criminal History

The substantive question presented is how an Oklahoma prosecution resulting in a deferred sentencing should be fit into the Kansas statutory scheme for determining a defendant's criminal history. As the caselaw has developed, it should be counted. But that authority neglects governing Kansas statutes that appear to require the opposite result. Because the cases include a studied decision from the Kansas Supreme Court, I am required to stick with that conclusion, despite a contrary statutory argument that seems compelling. I begin with the statutes and then discuss the caselaw.

As provided in K.S.A. 2013 Supp. 21-6810(a), a defendant's criminal history category is "based on . . . convictions." The statute then identifies convictions included in the criminal history with generic labels such as "person felony adult convictions" and "person felony juvenile adjudications." The statute does not include a definition of conviction. But K.S.A. 2013 Supp. 21-5111(d) defines "conviction" as "includ[ing] a judgment of guilt entered upon a plea of guilty," a definition to be used throughout the Kansas Criminal Code.

As the majority notes, the term "conviction" may refer to a final judgment of guilt and punishment in a criminal case. See, e.g., 18 U.S.C. § 3582(b) (2006); *Dillon v. United States*, 560 U.S. 817, 824, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010). But it may also mean a judicial finding of guilt entered upon a plea or verdict—an intermediate step in a prosecution before sentencing. See *Deal v. United States*, 508 U.S. 129, 132, 113 S. Ct. 1993, 124 L. Ed. 2d 44 (1993) (conviction may refer "to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," as the Court found it must for purposes of the federal statute governing certain firearms offenses); Black's Law Dictionary 384 (9th ed. 2009). Thus, as the *Deal* Court recognized: "It is certainly correct that the word 'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding." 508 U.S. at 131.

The Kansas Legislature presumably intended to avoid uncertainty about the meaning of the word "conviction" for purposes of the criminal code by defining it in K.S.A. 2013 Supp. 21-5111(d). That definition broadens the meaning from a final judgment including punishment to include a judicial determination of guilt upon a plea. Applying the statutory definition of conviction to the prosecution of Hankins in Oklahoma, that proceeding cannot be considered a conviction for purposes of the sentencing statutes in the Kansas Criminal Code. The Oklahoma deferred sentencing process pointedly excludes a judicial finding or judgment of guilt unless a defendant violates the conditions imposed as part of the deferral. Everybody agrees that Hankins successfully completed the process. So no Oklahoma court adjudged him guilty, and the charges were dismissed. In short, the definition of conviction in K.S.A. 2013 Supp. 21-5111(d) does not encompass a successful deferred sentencing proceeding in Oklahoma, and, on that basis at least, Hankins would seem to have a sound argument for excluding it from his criminal history score in this case.

Had the legislature wanted to treat a plea of guilty without a judicial finding or judgment of guilt as a conviction, it easily could have done so. The legislature simply could have said that a conviction "includes a plea of guilty," jettisoning the mention of a judgment of guilt and, thus, any reference to judicial action following the plea itself. That would be an unusual meaning. But the legislature presumably would be free to adopt such a definition.

To read the actual language of K.S.A. 2013 Supp. 21-5111(d) that way, however, contravenes basic principles of statutory construction by altering the plain meaning of the words and rendering part of the statute superfluous. See *Robinson v. City of Wichita Retirement Bd. of Trustees*, 291 Kan. 266, Syl. ¶ 6, 241 P.3d 15 (2010) (The court "will not speculate on legislative intent and will not read the [statutory] provision to add something not readily found in it."); *State v. Van Hoet*, 277 Kan. 815, 826-27, 89 P.3d 606 (2004) ("The court should avoid interpreting a statute in such a way that part of it becomes surplusage."). That reading would impute a peculiar definition to the term "conviction" absent any

signal from the legislature to that effect. And it really would contradict the reasonable import of the statutory language.

If I were writing on the proverbial clean slate, I would say the controlling definition of conviction in K.S.A. 2013 Supp. 21-5111(d), coupled with the Oklahoma statute outlining deferred sentencing prosecutions, requires excluding Hankins' Oklahoma prosecution in determining his criminal history score. But I am not so favored.[3]

[3]I discount the majority's argument that the Oklahoma courts have treated deferred sentencing proceedings as convictions. There are several problems with that approach. First, of course, Kansas law governs what is and is not a conviction for purposes of establishing a defendant's criminal history. Second, in *Gonseth v. State*, 871 P.2d 51, 54 (Okla. Crim. App. 1994), which the majority cites, the court suggested that a defendant pleading guilty under a deferred sentencing and being ordered to fulfill certain conditions could then appeal. The court reasoned the process, at that point, could be treated as a "conviction" upon a guilty plea within the meaning of the statute authorizing criminal appeals. But the holding is plainly limited to the statute governing appeals. And technically, the court recognized the appeal to be from a denial of the defendant's motion to withdraw the plea rather than from a conviction. 871 P.2d at 54. More importantly, however, the Oklahoma appellate courts have recognized that a defendant successfully completing the deferred sentencing process cannot be treated as having been convicted of the underlying offense. *Platt v. State*, 2008 OK CR 20, ¶ 13, 188 P.3d 196 (Construing the comparable deferred sentencing process for drug offenders, the court finds that after the charges have been dismissed, the defendants' guilty pleas "would *not* constitute prior 'convictions' " impairing the right to possess firearms under Oklahoma law.) (Emphasis added.) The circumstances considered in *Platt* match Hankins' situation; those in *Gonseth* do not.

In *Macias*, a panel of this court held that a Texas prosecution that functionally operated the same way as the Oklahoma deferred sentencing procedure amounted to a conviction that should be included in a Kansas defendant's criminal history score. 30 Kan. App. 2d at 81 (under Texas statute, trial court takes defendant's guilty plea but defers further proceedings without adjudicating guilt), at 83 (offense may be included in criminal history if out-of-state court determined defendant committed the crime, as by receiving guilty plea). The panel reasoned that a foreign prosecution should be scored for criminal history purposes if a court determined the defendant committed the offense, even though no judgment or ad-

judication of guilt had been entered. 30 Kan. App. 2d at 81. The court cited K.S.A. 21-4710, the predecessor to K.S.A. 2013 Supp. 21-6810, describing generally the sorts of convictions to be included in a criminal history without defining the term "conviction." The court, however, did not mention, let alone discuss or distinguish, K.S.A. 21-3110(4) that defined conviction the same way it is now in K.S.A. 2013 Supp. 21-5111(d). The failure to account for the definition of conviction controlling under the Kansas Criminal Code—including the statutes governing sentencing— amounts to a significant shortcoming that seems to undercut the rationale and the result in *Macias*.

If *Macias* and later decisions of this court trading on the same reasoning and the same omission of the statutory definition of conviction, *e.g., Siesener*, 35 Kan. App. 2d at 650-52, constituted the precedential universe, I likely would vote to reverse in this case. While a published decision from one panel of this court binds district courts, it has no preclusive or stare decisis effect on later panels. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010); *Osterhaus v. Toth*, 39 Kan. App. 2d 999, 1008, 187 P.3d 126 (2008), *aff'd* 291 Kan. 759, 249 P.3d 888 (2011). But the Kansas Supreme Court adopted the reasoning of *Macias* in *Pollard*, 273 Kan. at 713-14. This court *is* bound to the rulings of higher judicial authority. *State v. Dawson*, 43 Kan. App. 2d 800, 803, 231 P.3d 582, *rev. denied* 290 Kan. 1097 (2010).

In a technical sense, *Pollard*'s endorsement of *Macias* is dicta. The issue in *Pollard* was different, and *Macias* was cited as authority addressing an analogous proposition in a comparable manner. The *Pollard* court discussed *Macias* in some detail and fully integrated the panel's reasoning into its resolution of the case. 273 Kan. at 713-14. The court did not, however, note or comment on the failure of the *Macias* panel to consider the statutory definition of a conviction in resolving the dispute· over what should be included in criminal histories. Nonetheless, *Pollard*'s substantial reliance on *Macias* effectively imbues that approach and analysis with something approaching precedential force.

As other courts have observed, dicta comes packaged in all different ways. Dicta, as a dismissive label, typically gets put on a

short aside largely disconnected from the issue being decided. That sort of comment—something of an academic or even idle musing of the authoring judge—may be treated as having no precedential force, since it forms no part of the holding or the structured reasoning leading to the holding. See *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (Some dicta may be characterized as "devoid-of-analysis, throw-away kind of dicta" and discounted accordingly.). Conversely, dicta reflecting detailed review and analysis from a higher judicial authority should be afforded deference and cannot be " 'lightly cast aside.' " 451 F.3d at 1325-26; see also *Black Warrior Riverkeeper v. Black Warrior Min's, Inc.*, 734 F.3d 1297, 1305-06 (11th Cir. 2013); *Southern Wine & Spirits v. Alcohol & Tobacco Ctrl.*, 731 F.3d 799, 809 (8th Cir. 2013) (courts of appeal owe the "Supreme Court's considered dicta" nearly as much deference as "outright holdings"); *United States v. Orona*, 724 F.3d 1297, 1311 (10th Cir. 2013) (court of appeals bound by "Supreme Court dicta almost as firmly as by the Court's outright holdings"); *McCravy v. Metropolitan Life Ins. Co.*, 690 F.3d 176, 182 n.2 (4th Cir. 2012).

The Kansas Supreme Court's treatment of *Macias* in *Pollard* looks to me to be in the category of studied dicta commanding near precedential treatment under the customary considerations of stare decisis. While the Kansas Supreme Court itself may abandon or retool that dicta, a panel of this court really ought not. So I am constrained to follow and apply *Macias*—not because I think it is correct or because it is a published opinion of another panel but because the Kansas Supreme Court has weighed the decision and incorporated it into considered reasoning applied to resolve a different legal dispute. For that reason, I concur in the result here. The district court did not err in using the Oklahoma deferred prosecution of Hankins to increase his criminal history in this case.

### III. INVITED ERROR INAPPLICABLE HERE

The majority incorrectly holds that the invited error doctrine bars review of Hankins' challenge to the inclusion of the Oklahoma deferred sentencing in his criminal history score. That determination is wrong on several grounds implicating both statutory and

constitutional rights. I question whether a defendant can irrevocably "invite" a legal error directly increasing his or her criminal history score, especially when the error leads to a term of incarceration longer than the sentencing statutes would otherwise provide. For that reason, I do not join in the majority's reliance on invited error to deny Hankins' appeal.

## A. *Statutory Considerations*

Putting constitutional issues to one side for the moment, I consider K.S.A. 2013 Supp. 21-6814, the statute governing how the district court should establish a defendant's criminal history score and how a defendant may challenge that history. In pertinent part, the statute provides:

"(a) The offender's criminal history shall be admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge.

. . . .

"(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error. The state shall have the burden of proving the disputed portion of the offender's criminal history. The sentencing judge shall allow the state reasonable time to produce evidence to establish its burden of proof. *If the offender later challenges such offender's criminal history, which has been previously established, the burden of proof shall shift to the offender to prove such offender's criminal history by a preponderance of the evidence.*" (Emphasis added.) K.S.A. 2013 Supp. 21-6814.

The statute recodifies K.S.A. 21-4715. The Kansas Legislature added the italicized portion of subsection (c) in 2009. The 2009 amendment effectively negates the invited error doctrine with respect to a defendant's criminal history and, thus, allows a defendant to challenge a legal mistake in his or her criminal history even after admitting to the mistaken history at sentencing. The amendment also undercuts the majority's rationale and the caselaw on which it relies. The case authority either predates the 2009 amendment or fails to acknowledge and account for that statutory change.

The amendment plainly allows a defendant to "later challenge" a criminal history that "has previously been established." As the

statute outlines, a defendant's criminal history may be established at sentencing in either of two ways: the defendant may admit the history or the prosecution may prove the history to the district court by a preponderance of evidence. The amendment, then, permits a defendant to contest an established criminal history in a "later challenge"—one coming after sentencing. And the amendment permits the challenge without regard to how the criminal history had been shown at sentencing—so the defendant may dispute his or her own admission at sentencing. The amendment shifts the burden of proof in a postsentencing challenge from the prosecution to the defendant.

The invited error doctrine—a judicially created rule akin to estoppel—precludes a party from asking a district court to rule a given way and then challenging that ruling as error on appeal. See *State v. Hargrove*, 48 Kan. App. 2d 522, Syl. ¶ 2, 293 P.3d 787 (2013) (describing invited error); 48 Kan. App. 2d at 548-49 (noting similarities between invited error and judicial estoppel). In short, a party cannot invite a court to do something and then complain because the invitation has been accepted. Because invited error entails a common-law rule, the legislature may statutorily limit or negate its use. K.S.A. 77-109 (the common law may be modified by statutory enactment); see *State v. Williams*, 283 Kan. 492, 495, 153 P.3d 520 (2007) (legislature may change common-law rule establishing age at which criminal liability attaches to misconduct); *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 617, 132 P.3d 870 (2006) (legislature may change common-law water rights). As I discuss, there also may be constitutional limitations on enforcing the rule in some circumstances. See *Hargrove*, 48 Kan. App. 2d at 554-55.

Giving the language of K.S.A. 2013 Supp. 21-6814(c) a plain meaning, I would conclude the legislature intended to allow defendants to assert errors in their criminal histories after they have been sentenced. While an appellate court shouldn't plumb the wisdom of the policy considerations behind legislative action, my reading of K.S.A. 2013 Supp. 21-6814(c) promotes a reasonable result and a sound policy. See *Fisher v. DeCarvalho*, 298 Kan. 482, 495, 314 P.3d 214 (2013) ("[W]e have a canon of construction that di-

rects us to construe statutes to avoid unreasonable or absurd results."). The statute basically helps insure that a convicted criminal serve no longer in prison than the law requires by allowing correction of legal errors elevating criminal histories and, in turn, directing the district court to an excessive presumptive sentence. That reflects a reasonable objective. See *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government."). *State v. Parker*, No. 107,616, 2013 WL 2991138, at *3 (Kan. App. 2013) (unpublished opinion) (Atcheson, J., dissenting) ("The State should not deprive a citizen of his or her freedom for a single day longer than the rule of law requires."). To foster that objective, the legislature has the prerogative to void the invited error doctrine as a ground for denying relief. That's what the amendment to K.S.A. 2013 Supp. 21-6814(c) does.

Defendants should not be forced to serve unduly long sentences because they and their lawyers agree to legally incorrect criminal histories. So a defendant's agreement to his or her criminal history at sentencing will not bar a later challenge to inaccuracies in the history. Under K.S.A. 2013 Supp. 21-6814(c), the basic fairness of imprisoning someone no longer than the law permits trumps the invited error doctrine as applied to a defendant's admission of his or her criminal history at sentencing. The statutory approach also makes sense given the sometimes difficult task in sorting out the legal implications of out-of-state criminal proceedings, as this case illustrates. Mistakes are inevitable, but the cost shouldn't be legally excessive imprisonment.

The legislature also presumably intended the amendment to reverse the holding in *State v. Schow*, 287 Kan. 529, 539-40, 197 P.3d 825 (2008), requiring the prosecution to bear the burden of proving convictions a defendant challenges even though they appear on a criminal history worksheet established in an earlier case and then incorporated as part of the worksheet for the current case. The 2009 amendment shifts the burden of proof to the defendant in that situation, but the statutory language permitting later challenges to a criminal history is not limited to that circumstance.

The majority contends my construction of the 2009 amendment somehow renders superfluous or meaningless the statutory obligation imposed on a defendant to raise purported errors in his or her criminal history report before the sentencing hearing. But that is quite incorrect. A defendant must adhere to the objection process to cast upon the State the burden of proving the disputed entries in his or her criminal history. If the defendant simply raises a "later challenge" after sentencing, he or she must disprove the criminal history. Under my reading of the statute, the presentencing notice requirement triggers the issue and allocates the burden of proof, so it serves not only a useful purpose but an important one. The majority offers a blinkered reading of the amendment's plain language by limiting later challenges to ones raised in successive cases.

The amendment of K.S.A. 2013 Supp. 21-6814(c) restores a motion to correct an illegal sentence as a proper procedural vehicle for a defendant to assert a "later challenge" to his or her criminal history. See K.S.A. 22-3504(1) (court may correct illegal sentence at any time). A sentence that does not conform to the term of authorized punishment is illegal within the meaning of K.S.A. 22-3504. *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). If a defendant's criminal history has been erroneously determined, the resulting term of imprisonment will not be statutorily authorized and, thus, can be challenged as illegal. *State v. Neal*, 292 Kan. 625, 630-31, 258 P.3d 365 (2011).

The published cases the majority cites supporting application of the invited error doctrine to a defendant's agreement with his or her criminal history at sentencing predate the 2009 amendment to 21-6814(c), see *State v. Vandervort*, 276 Kan. 164, 175-76, 72 P.3d 925 (2003); *State v. Goeller*, 276 Kan. 578, Syl. ¶ 6, 77 P.3d 1272 (2003); and *Neal v. State*, 25 Kan. App. 2d 705, 706, 971 P.2d 748 (1998), *rev. denied* 266 Kan. 1109 (1999), and, therefore, cannot be controlling. *Neal v. United States*, 516 U.S. 284, 295-96, 116 S. Ct. 763, 133 L. Ed. 2d 709 (1996) (force of precedent or stare decisis construing statute undercut when legislative body later materially changes statutory language); *Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 989 (7th Cir. 2001) (court should apply stare decisis and

adhere to precedential decisions unless "subsequent statutory changes . . . have rendered them infirm"). In a word, the statutory change makes the earlier caselaw inapposite. The later unpublished case the majority cites, *State v. Madkins*, No. 104,350, 2011 WL 4031531 (Kan. App. 2011) (unpublished opinion), *rev. denied* 294 Kan. 945 (May 21, 2012), fares no better. It simply relies on the cases predating the 2009 amendment of 21-6814(c) and fails to note the statutory change negating invited error as a bar to a defendant's challenge to his or her criminal history. I would find that the present version of K.S.A. 2013 Supp. 21-6814 precludes judicial reliance on invited error to bar consideration of Hankins' challenge to his criminal history.[4]

[4]In *State v. Wetrich*, 49 Kan. App. 2d 34, 38, 43-44, 304 P.3d 346 (2013), this court recognized that the 2009 amendment to K.S.A. 2013 Supp. 21-6814(c) precluded the State from invoking collateral estoppel to prevent the defendant from contesting his criminal history when he had already challenged it and lost in an earlier case. The result in *Wetrich* comes within the ambit of the amended statutory language and is consistent with the construction I suggest. The amendment embraces both those factual situations and furthers the overarching objective of seeing that a criminal defendant is properly sentenced using a legally correct criminal history score.

## B. *Constitutional Considerations*

Apart from the statutory protection in K.S.A. 2013 Supp. 21-6814, Hankins probably has a constitutional argument of sufficient gravity to override any purported bar based on invited error. A citizen has a substantive due process right not to be held or incarcerated longer than a lawful sentence requires. See *Hamdi*, 542 U.S. at 529; *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Meachum v. Fano*, 427 U.S. 215, 224, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976) ("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."); *Golberg v. Hennepin County*, 417 F.3d 808, 811 (8th Cir. 2005) (recognizing substantive due process liberty interest in a right to "timely release" from "initially lawful detention"); *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("We

have recognized a protected liberty interest in being free from wrongful, prolonged incarceration."). The right would be a fundamental one that likely cannot be compromised by the error invited here. A defendant generally should not be precluded from challenging his or her acquiescence in a legal error in the computation of his or her sentence that results in too long a period of incarceration. That is qualitatively different from a legitimate (if unsuccessful) trial tactic deployed to establish reasonable doubt as to criminal liability. Those sorts of strategic trial decisions bind defendants precisely because they represent choices between reasonable alternatives. See *State v. Cheatham*, 296 Kan. 417, 443-45, 292 P.3d 318 (2013) (defense lawyer's conduct at trial may be deemed ineffective where proffered strategic explanation could be characterized as something between "a misunderstanding of the law" and simply "nonsensical"); *State v. Rice*, 261 Kan. 567, 607, 932 P.2d 981 (1997) (defense lawyer may be ineffective when handling of critical aspects of trial lacked "any justifiable strategic considerations").

A defendant furthers no sound strategy by admitting to an inaccurately high criminal history at sentencing. Here, Hankins' lawyer told the district court at sentencing that inclusion of the Oklahoma deferred prosecution in the criminal history could be fairly disputed but he chose not to do so. In denying Hankins' motion to correct an illegal sentence, the district court concluded: "It is apparent that during sentencing the Defendant argued for leniency because he did not challenge his criminal history or add additional burdens to the prosecutor." And the district court considered any error to be invited as a result. But the premise is an impermissible one, the purported strategy legally unjustifiable, and the legal conclusion mistaken.

The premise is this: The prosecutor and a sentencing court may extend leniency if a defendant declines to raise legitimate issues that cause them to spend more time and effort on the case. The pernicious character of the proposition becomes plain in considering its obverse rendition, *i.e.*, a prosecutor or a sentencing court may increase a defendant's punishment because the defendant asserts legitimate issues that cause them to spend more time and

effort on the case. But that would amount to impermissible prosecutorial or judicial vindictiveness violating a defendant's due process rights. *Alabama v. Smith*, 490 U.S. 794, 798-800, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) (judicial vindictiveness); *Blackledge v. Perry*, 417 U.S. 21, 27-29, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974) (prosecutorial vindictiveness); *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) ("At a minimum, prosecutorial discretion is restrained by the Due Process Clause, which prohibits the prosecution from punishing a defendant for exercising a protected statutory or constitutional right."); *State v. Revelo*, 256 Conn. 494, 513, 775 A.2d 260 (2001) (trial court violated defendant's due process rights by adding a year to defendant's sentence for the stated reason that defendant pursued a motion to suppress before entering plea); see *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) (discussing in detail judicial and prosecutorial vindictiveness).

The point is that invited error typically applies to some colorable strategic choice, and the articulated strategy here—avoiding impermissible vindictiveness—fails in that respect. So the invited error should not negate a violation of a defendant's substantive due process right to a lawful sentence. Accordingly, invited error ought not bar Hankins' appeal.[5]

[5]The procedural vehicle for a constitutional challenge to a sentence would be a petition under K.S.A. 60-1501 or a motion under K.S.A. 60-1507, permitting constitutionally based attacks on terms of incarceration or convictions. I don't need to parse which would apply, and that determination might depend on how the issue were framed. A motion to correct an illegal sentence would not suffice to raise a constitutional argument. *State v. Edwards*, 281 Kan. 1334, Syl. ¶¶ 1, 2, 135 P.3d 1251 (2006) (defining illegal sentence and holding it does not include "a sentence [that] fails to conform to constitutional requirements"). But a pro se motion to correct an illegal sentence may be construed to assert claims under either K.S.A. 60-1501 or K.S.A. 60-1507 that would be consistent with the requested relief. See *State v. Kelly*, 291 Kan. 563, Syl. ¶ 1, 244 P.3d 639 (2010); *State v. Swisher*, 281 Kan. 447, 449, 132 P.3d 1274 (2006).

In closing, I add several observations to avoid possible misunderstanding of my comments on prosecutorial and judicial vindictiveness. Here, of course, there was nothing to suggest either prosecutorial or judicial vindictiveness in the sentence. Hankins

received. And I don't mean to imply there might have been. Rather, as I have indicated, the articulation of avoiding impermissible vindictiveness as a strategic reason for not contesting the inclusion of the Oklahoma deferred sentencing in Hankins' criminal history simply fails to justify the majority's rejection of that challenge as invited error.

Second, actionable prosecutorial or judicial vindictiveness is uncommon, and the proof is demanding. See *Goodwin*, 457 U.S. at 375-78, 384 (defendant typically must objectively prove vindictiveness, and vindictiveness may be presumed only in rare circumstances, usually when a defendant is punished more harshly following successful appeal and reversal of an initial conviction). More narrowly, for example, the State may seek an increased sentence following failed plea negotiations without engaging in prohibited conduct, especially when a defendant goes to trial and is convicted. Both the prosecutor and the sentencing court may fairly consider a defendant's willingness to accept responsibility for his or her wrongful conduct in a plea as a mitigating circumstance warranting some leniency. See *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010). In short, impermissible vindictiveness does not lurk behind every charging or sentencing decision, and a defendant cannot advance a colorable claim based on deflated expectations.