No. 114,433

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RANDY D. THOMAS,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 22-3504(1) authorizes a court to correct an illegal sentence at any time.

2.

An illegal sentence is one that does not conform to the applicable statutory provision, either in character or the term of authorized punishment.

3.

Waiver is the voluntary and intentional relinquishment of a known right and the expression of an intention not to insist upon what the law affords.

4.

The doctrine of invited error precludes a party from affirmatively requesting a district court rule on a particular issue in a given way and then challenging that ruling on appeal.

1

5.

A stipulation or lack of an objection regarding how a conviction listed in the criminal history should be classified for the purpose of determining the defendant's criminal history score will not prevent a subsequent challenge under K.S.A. 22-3504(1) of his or her prior convictions.

6.

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

7.

The right of a criminal defendant to be tried by a jury of his or her peers, rather than by the court alone, is fundamental to the American scheme of justice.

8.

The district court cannot accept an *Apprendi* waiver of jury trial rights unless the defendant, after being advised by the court of his or her right to trial by jury, personally waives that right, either in writing or in open court for the record. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

9.

The test for determining the validity of an *Apprendi* waiver is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

10.

Under the facts of this case, the district court was constitutionally prohibited from classifying the defendant's prior burglary adjudication as a person felony under K.S.A.

21-4711(d) because doing so necessarily resulted from the district court making or adopting a factual finding (*i.e.*, the prior burglary involved a dwelling) that went beyond simply identifying the statutory elements that constituted the prior burglary adjudication.

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed September 30, 2016. Sentence vacated and case remanded with directions.

*Eric Kjorlie*, of Topeka, for appellant.

*Elizabeth A. Billinger*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER and STANDRIDGE, JJ.

STANDRIDGE, J.:  On July 19, 2002, a jury convicted Randy D. Thomas of second-degree murder. A presentence investigation (PSI) report prepared before sentencing indicated that Thomas' criminal history scored B, based in part on a 1990 juvenile adjudication as "Burglary (Building Used As a Dwelling)" and classified on the PSI report as a person felony. On October 25, 2002, the court sentenced Thomas to 586 months in prison and 36 months' postrelease supervision, which was within the presumptive sentencing range.

Thomas filed a motion to correct sentence on February 2, 2015, arguing the sentencing court misclassified his 1990 Kansas juvenile adjudication for burglary as a person offense for criminal history purposes, which in turn violated his constitutional rights under *Descamps v. United States*, 570 U.S. __, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), as applied by our state in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). The district court summarily dismissed Thomas' motion, finding that "*Dickey* does not

allow [Thomas] to raise a constitutional challenge in a post-direct appeal motion to correct an illegal sentence."

ANALYSIS

Thomas claims the district court erroneously denied his motion to correct an illegal sentence. Under K.S.A. 22-3504(1), a "court may correct an illegal sentence at any time." Our Supreme Court has defined "illegal sentence" under K.S.A. 22-3504 as:

> "'(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served. [Citations omitted.]'" *State v. Moncla*, 301 Kan. 549, 551, 343 P.3d 1161 (2015).

The State argues that this court should not reach the merits of whether Thomas' sentence is illegal because the issue is procedurally barred by waiver, invited error, and res judicata because the holding in *Dickey* should not be retroactively applied, and because K.S.A. 22-3504 is the improper procedural vehicle to challenge the constitutionality of a sentence. Before reaching the merits of Thomas' claim, we address each of the State's procedural arguments.

1. *The State's procedural arguments*

    a. *Waiver and invited error*

The State argues Thomas has waived his right to challenge—and is precluded by the doctrine of invited error from challenging—any alleged error by the district court in classifying his prior juvenile adjudication for burglary as a person offense for purposes of calculating his criminal history score. We begin our discussion with a brief review of waiver and the doctrine of invited error.

4

In Kansas, waiver is defined as the voluntary and intentional relinquishment of a known right and the expression of an intention not to insist upon what the law affords. See *Prather v. Colorado Oil & Gas Corp.*, 218 Kan. 111, 117, 542 P.2d 297 (1975); *Jones v. Jones*, 215 Kan. 102, 116, 523 P.2d 743 (1974). "Waiver must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with an intention to claim forfeiture of a right." *Patrons Mut. Ins. Ass'n v. Union Gas System, Inc.*, 250 Kan. 722, 725-26, 830 P.2d 35 (1992). Thus, in order for a waiver to be constitutionally valid, the record must affirmatively reflect that the defendant personally (1) understood the specific right or rights being waived; and (2) either by action or inaction, established that he or she unequivocally intended to waive the specific right or rights.

The doctrine of invited error precludes a party from affirmatively requesting a district court rule on a particular issue in a given way and then challenging that ruling on appeal. See *State v. Hargrove*, 48 Kan. App. 2d 522, Syl. ¶ 2, 293 P.3d 787 (2013) (describing invited error). The doctrine of invited error "should be tailored as necessary to serve its particular purpose without unnecessarily thwarting the ends of justice." 48 Kan. App. 2d at 553.

As a general rule, Kansas appellate courts have drawn no particular distinction between waiver and invited error. 48 Kan. App. 2d at 546. As defined by our courts, however, one can invite error without waiving a known right; *e.g.*, when a lawyer or party asks the court to act in a certain way but in doing so does not understand that the action will impair or extinguish a legal right. See *United States v. Barrow*, 118 F.3d 482, 490-91 (6th Cir. 1997) (Invited error "is a branch of the doctrine of waiver" that may yield to "the interests of justice," as where both the government and the defense jointly requested a defective jury instruction.).

5

Turning to the facts of this case, the State contends that waiver and invited error preclude the court from considering Thomas' motion to correct an illegal sentence under K.S.A. 22-3504(1). In support of this contention, the State notes that when the district judge asked Thomas' attorney whether he controverted any criminal history in the PSI report, the attorney responded, "No." The State further notes that Thomas' 1990 juvenile burglary adjudication was listed in the PSI report. The State argues by failing to controvert a criminal history that listed the 1990 juvenile burglary adjudication, Thomas waived the right to challenge his 1990 juvenile burglary adjudication and invited any error by the district court in using that adjudication to then calculate his sentence.

But the facts here do not establish waiver or invited error for the purpose of precluding Thomas from challenging an illegal sentence. As to waiver, the response of no by Thomas' attorney when asked by the district court judge whether the attorney controverted any criminal history in Thomas' PSI report fails to establish Thomas personally knew he was voluntarily and intentionally waiving his right to later ask the court to correct the misclassification of a prior juvenile adjudication as a person offense in his criminal history. As to invited error, the record demonstrates that neither Thomas nor his counsel affirmatively invited, encouraged, or induced the court to misclassify his prior juvenile adjudication as a person offense in his criminal history and ultimately impose an illegal sentence as a result.

The conclusion that neither waiver nor invited error precludes Thomas from challenging an illegal sentence is consistent with Kansas Supreme Court precedent with facts almost identical to those presented here. In *Dickey*, the court declared that "a stipulation or lack of an objection regarding how those convictions [listed in the criminal history] should be classified or counted as a matter of law for the purpose of determining the defendant's criminal history score will not prevent a subsequent challenge under K.S.A. 22-3504(1) of his or her prior convictions." 301 Kan. at 1032. The same analysis applies here. Thomas did not waive his right to obtain relief from an illegal sentence or

6

invite error when his attorney responded no when asked by the district court whether the attorney controverted any criminal history in Thomas' PSI report.

The dissent, however, finds this case factually distinguishable from *Dickey* on the issue of waiver and invited error. Specifically, the dissent notes that the PSI report describes Thomas' prior juvenile adjudication as "Burglary (Building Used As a Dwelling)" while the description of Dickey's prior juvenile adjudication did not describe the burglary as one that included a dwelling. The dissent posits that because the person who drafted Thomas' PSI report described the prior juvenile adjudication as burglary of a dwelling, Thomas stipulated to the fact that an adjudication for burglary of a dwelling existed in his criminal history. By construing it as a stipulation to the *existence of an adjudication* in his criminal history as opposed to a stipulation to *how an adjudication in his criminal history should be classified*, the dissent claims *Dickey* does not control and Thomas has waived any right to challenge his prior adjudication for burglary of a dwelling. Based on Thomas' stipulation to the dwelling component, the dissent concludes any challenge to how the conviction should be classified is moot because there is no dispute that burglary of a dwelling is a person offense.

But our Supreme Court recently issued an opinion contrary to the position taken by the dissent. *State v. Hankins*, 304 Kan. 226, 372 P.3d 1124 (2016) (*Hankins II*). In *Hankins II*, the defendant's PSI report listed two prior misdemeanor convictions and one prior nonperson felony conviction. The felony was based on a possession of a firearm on school property charge in Oklahoma and raised Hankins' criminal history score to a G. Hankins filed a motion for dispositional departure. In response to the district court's inquiry at sentencing regarding whether the parties "'had a chance to look'" at the PSI report, Hankins' counsel responded, "'We have.'" 304 Kan. at 227. The district court denied Hankins' departure motion and imposed a controlling sentence of 68 months in prison.

Hankins filed a motion to correct an illegal sentence asserting that his criminal history score should not have included the Oklahoma nonperson felony because Hankins received a deferred judgment for the Oklahoma crime which did not constitute a conviction for criminal history scoring purposes. The district court ultimately denied the motion, holding that defense counsel's stipulation to criminal history during sentencing waived Hankins' right to later challenge the criminal history score. In so holding, the district court specifically found Hankins was not challenging how the prior conviction was scored—rather, he was challenging the existence of the conviction in his criminal history.

A panel of this court affirmed the district court's decision to deny Hankins' motion to correct an illegal sentence. A majority of the court found Hankins' challenge to his criminal history score was barred based on the invited error doctrine. *State v. Hankins*, 49 Kan. App. 2d 971, 978, 319 P.3d 571 (2014) (*Hankins I*).

On petition for review, however, our Supreme Court reversed *Hankins I*. The court relied on its recent decision in *Dickey*, 301 Kan. at 1032, to reiterate that stipulating to criminal history does not create a procedural bar to filing a subsequent motion to correct illegal sentence. *Hankins II*, 304 Kan. at 231. And relevant to the position taken by the dissent, the court specifically clarified that a stipulation or failure to object to criminal history cannot be characterized as a stipulation of fact for purposes of precluding a later challenge to illegal sentence:

> "The Court of Appeals majority attempted to skirt that precedent by characterizing Hankins' stipulation as being a factual one, because he was 'challenging the very inclusion of this item [in the PSI], not its classification.' *Hankins* [*I*], 49 Kan. App. 2d at 976. The majority's reasoning was based in part on its declaration that a 'PSI does not list cases. It lists only convictions.' 49 Kan. App. 2d at 976. But of course not all convictions are part of the criminal history calculation either." *Hankins II*, 304 Kan. at 232.

8

Although not part of its reasoning, the result in *Hankins II* is consistent with the United States Supreme Court's decision in *Apprendi*, which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Although nothing prevents a defendant from waiving his or her *Apprendi* rights, there is no evidence in the record to establish that Thomas did so here. The following discussion is helpful to understand what would have been required in order for us to have found that Thomas validly waived his right under *Apprendi* to have a jury determine whether his prior burglary adjudication involved a dwelling.

The burglary statute in effect when Thomas was adjudicated on February 27, 1990, did not include a "dwelling" element. Thus, the "fact" of his prior adjudication, as that word is used in *Apprendi*, was the elements of the burglary statute as it existed in 1990:

> "knowingly and without authority entering into or remaining within any: (1) Building, mobile home, tent or other structure, with intent to commit a felony or theft therein; or (2) any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony or theft therein." K.S.A. 1989 Supp. 21-3715.

If the sentencing court were to consider Thomas' 1990 juvenile adjudication for burglary as one that involved a dwelling, it would have to consider the "dwelling" aspect as an additional fact beyond the elements set forth in the 1990 burglary statute. When the sentencing court considers that additional fact, Thomas' juvenile adjudication for burglary would be reclassified as a person offense, which in turn would increase the penalty for his current crime beyond the prescribed statutory maximum. And because this additional fact would increase the penalty for a crime beyond the prescribed statutory maximum, the United States Supreme Court dictates that the additional fact "must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.

9

"The right of a criminal defendant to be tried by a jury of his [or her] peers, rather than by the court alone, is 'fundamental to the American scheme of justice.'" *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 [1968]). Although "[a] criminal defendant may waive the fundamental right to a jury trial if the court and State agree to the waiver," such waivers are "strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury." *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012) (citing *Irving*, 216 Kan. at 589). Therefore, the district court cannot accept a jury trial waiver "'unless the defendant, after being advised by the court of his [or her] right to trial by jury, personally waives his [or her] right to trial by jury, either in writing or in open court for the record.'" *Irving*, 216 Kan. at 590. "The test for determining the waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. Whether that test is satisfied depends upon the particular facts and circumstances in each case." *Beaman*, 295 Kan. at 858.

Here, there is no indication in the record that the court advised Thomas that a failure to controvert any of the criminal history set forth in his PSI report would result in a waiver of his right to have a jury make any factual findings required to classify a prior conviction as a person offense for criminal history purposes. Likewise, there is no indication in the record that Thomas personally waived his right to have a jury make any factual findings required to classify a prior conviction as a person offense for criminal history purposes; instead, the record reflects that the district judge asked Thomas' counsel whether he had reviewed the criminal history and whether he controverted any of it. The court did not direct any questions to Thomas on this issue or otherwise attempt to secure a waiver from him. A waiver will not be presumed from a silent record. *Irving*, 216 Kan. at 589. Based on the record in this case, deeming Thomas to have waived his right under *Apprendi* to have a jury determine whether his prior burglary adjudication involved a dwelling would deprive Thomas of his right to a jury trial without due process of the law.

10

Based on the discussion above, we find Thomas has not waived his right to challenge and is not precluded by the doctrine of invited error from challenging his sentence as illegal. First, the facts here do not establish the doctrines of waiver or invited error apply to preclude Thomas' challenge. Second, under our Supreme Court's recent holdings in *Dickey* and *Hankins II*, it is clear that Thomas is bringing a legal challenge to how his prior burglary adjudication should be classified as a matter of law for purposes of determining his criminal history score as opposed to a challenge to the existence of the prior burglary adjudication itself. Finally, construing Thomas to have factually admitted to the existence of a prior burglary adjudication *that involved a dwelling* (which converted it to a person crime that raised the criminal history score and increased the penalty for the current crime beyond the prescribed statutory maximum) without securing a voluntary and knowing waiver of jury trial on the dwelling issue from Thomas effectively deprived him of his constitutional right to a jury trial in violation of *Apprendi*, 530 U.S. at 490 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

b. *Res judicata*

The State next argues that Thomas may not raise his illegal sentence claim in a collateral proceeding. Noting that this is Thomas' third appeal, the State claims that he is barred from challenging his criminal history calculation here. The applicability of res judicata is a question of law over which the appellate court has unlimited review. *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 (2013).

The general rule of res judicata requires a defendant to raise all available issues on direct appeal. See *State v. Neer*, 247 Kan. 137, 140-41, 795 P.2d 362 (1990). Our Supreme Court has recognized the statutory exception for motions to correct illegal sentences, which the legislature expressly provides may be brought "at any time." K.S.A.

11

22-3504(1); *State v. Luarks*, 302 Kan. 972, 975, 360 P.3d 418 (2015); *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011); *State v. Martin*, 52 Kan. App. 2d 474, Syl. ¶ 5, 369 P.3d 959 (2016) ("Applying the doctrine of res judicata to bar challenges of an illegal sentence merely because they could have been brought in a direct appeal would undermine the clear statutory directive in K.S.A. 22-3504[1] that courts may correct an illegal sentence at any time."). The doctrine of res judicata does not bar Thomas from seeking relief from an illegal sentence.

c. *Retroactive application of* Dickey

The State contends that *Dickey* may not be retroactively applied to Thomas' case, which became final in 2004, well before *Dickey* was decided. As a general rule, "when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not yet final on the date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298 P.3d 349 (2013).

However, the court's holding in *Dickey* is not a "change in the law" under that analysis, but rather an application of the constitutional rule announced in *Apprendi* and clarified by *Descamps*. See *Dickey*, 301 Kan. at 1021 ("[C]lassifying Dickey's prior burglary adjudication as a person felony violates his constitutional rights as described under *Descamps* and *Apprendi*."); *Martin*, 52 Kan. App. 2d at 484 ("*Descamps* provided a means by which to determine whether certain sentencing determinations violated *Apprendi*, and *Dickey* applied that framework to Kansas criminal history determinations."). Accordingly, the date *Apprendi* was decided is the relevant date for purposes of the retroactivity analysis. *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). In *Gould*, the court indicated that all post-*Apprendi* cases must comply with the constitutional rule announced in that case:

"Our holding on the constitutionality of upward departures under the KSGA [Kansas Sentencing Guidelines Act] has no retroactive application to cases final as of June 26, 2000, the date *Apprendi* was decided. However, the new constitutional sentencing rule established by *Apprendi* must be applied here and in all cases pending on direct appeal *or which are not yet final or which arose after June 26, 2000*. [Citation omitted.]" (Emphasis added.) *Gould*, 271 Kan. at 414.

Thomas' claim seeking relief from an illegal sentence in this case arose well after *Apprendi*; therefore, applying the *Apprendi* constitutional analysis set forth in *Dickey* is not an improperly retroactive application of that law. *Cf. Whisler v. State*, 272 Kan. 864, 36 P.3d 290 (2001) (direct appeal final prior to *Apprendi* decision, so *Apprendi* was not retroactively applied). Our finding in this regard corresponds with this court's recent finding in *Martin*:

"[W]e find that retroactivity analysis is not applicable when it is determined by a court that a constitutional error affects the defendant's criminal history score resulting in an illegal sentence. The legislative directive in K.S.A. 22-3504(1) allows courts to correct an illegal sentence at any time. Thus, we conclude that a claim under *Dickey* [*II*] may be brought by a defendant in a motion to correct illegal sentence even when the time for direct appeal has passed and the defendant's sentence is final." 52 Kan. App. 2d at 483-84.

As the court did in *Martin*, we conclude Thomas is not procedurally barred from obtaining relief from an illegal sentence based on the fact that Thomas' case was final when the Supreme Court's opinion in *Dickey* was filed.

d. *Procedural vehicle*

The State finally argues that Thomas' sentence is not illegal as contemplated by K.S.A. 22-3504(1) because Thomas makes a constitutional claim, which does not make a sentence illegal under Kansas law. See *State v. Lee*, 304 Kan. 416, 418, 372 P.3d 415

13

(2016) (motion to correct illegal sentence was not appropriate way to assert claim that sentence was unconstitutional); *State v. Warrior*, 303 Kan. 1008, Syl., 368 P.3d 1111 (2016) ("A motion to correct illegal sentence under K.S.A. 22-3504[1] is an improper procedural vehicle for a constitutional claim.").

But *Dickey* held that a challenge to a criminal history score is proper under K.S.A. 22-3504 because it is a claim that the sentence does not conform to the applicable statutory provision regarding the authorized punishment. 301 Kan. at 1034; see *Luarks*, 302 Kan. at 975 (claim alleging misclassification of prior convictions as person offenses "necessarily raise[s] a claim that the current sentence is illegal because it does not comply with the applicable statutory provision regarding the term of punishment authorized"); *Neal*, 292 Kan. at 631 (challenge to criminal history score necessarily challenges sentence that criminal history score helped produce). Thomas' claim is not barred by the doctrine of retroactivity.

2. *The merits:  an illegal sentence*

Finding no procedural bar, we now address the merits of Thomas' claim that the district court erred in classifying his 1990 juvenile adjudication for burglary as a person offense. Whether a sentence is illegal under K.S.A. 22-3504(1) and whether a district court properly classified a defendant's prior burglary adjudication as a person crime for criminal history purposes are questions of law over which an appellate court has unlimited review. See *Dickey*, 301 Kan. at 1034; *State v. Taylor*, 299 Kan. 5, 8, 319 P.3d 1256 (2014).

Like in *Dickey*, the statute in effect at the time Thomas committed his 1990 burglary did not include a dwelling element. So to classify Thomas' 1990 burglary adjudication as a person crime, the district court necessarily had to have found that this prior adjudication involved a "dwelling," which is a fact only a jury can find under

*Apprendi* because it is the fact that makes burglary a person crime and increases a defendant's sentence. *Dickey*, 301 Kan. at 1039-40; see K.S.A. 21-4711(d) (all burglaries of a dwelling must be considered person felonies). Thomas' 1990 juvenile adjudication for burglary should have been classified as a nonperson offense. Accordingly, we vacate the sentence imposed and remand the matter to the district court with directions to reclassify the 1990 juvenile adjudication for burglary as a nonperson offense, recalculate Thomas' criminal history score based on the reclassification, and resentence Thomas based on the recalculated criminal history score.

Sentence vacated and case remanded with directions.

\* \* \*

GARDNER, J., dissenting: A jury convicted Thomas of second-degree murder on July 19, 2002. A presentence investigation report (PSI) prepared prior to sentencing indicated that Thomas' criminal history scored B, based in part on a 1990 juvenile adjudication under K.S.A. 21-3715 which his PSI listed as "Burglary (Building Used As a Dwelling)" and classified as a person felony. Thomas did not object to his criminal history report and affirmatively admitted in his motion for a downward departure that the information on his PSI was correct. I agree with the State's argument that Thomas' challenge to the existence of that crime in his criminal history is barred by the invited error doctrine under *Dickey*.

*A defendant's criminal history must be admitted or proved*

A defendant's criminal history can be established at sentencing in only two ways: the defendant may admit the history, or the prosecution may prove the history to the district court by a preponderance of evidence. See K.S.A. 21-4715(a), recodified in K.S.A. 2015 Supp. 21-6814(a) (providing that the defendant's criminal history "shall be

15

admitted in open court by the offender or determined by a preponderance of the evidence at the sentencing hearing by the sentencing judge").

The same statute establishes a procedure for challenging any error in the proposed criminal history worksheet:

> "(b) Except to the extent disputed in accordance with subsection (c), the summary of the offender's criminal history prepared for the court by the state shall satisfy the state's burden of proof regarding an offender's criminal history.
> "(c) Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. Such notice shall specify the exact nature of the alleged error. The state shall have the burden of producing further evidence to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history and the sentencing judge shall allow the state reasonable time to produce such evidence to establish the disputed portion of the criminal history by a preponderance of the evidence." K.S.A. 21-4715.

See *State v. Schow*, 287 Kan. 529, 536-37, 197 P.3d 825 (2008).

As the statute states, the time and place to challenge the existence of a conviction listed on a defendant's criminal history in the PSI is when the defendant receives the worksheet, before he or she is sentenced. K.S.A. 21-4715. This makes sense because the defendant's criminal-history score affects the defendant's presumptive sentence under the Kansas Sentencing Guidelines Act. When a defendant disputes the existence of a conviction at that time, the procedures for fairly handling that challenge are established by the statute above; thus, the parties know what the defendant's notice of an error must state, who has the burden of producing evidence regarding criminal history, how much time the State has to produce additional evidence, and what standard of proof applies. K.S.A. 21-4715. Permitting a defendant to challenge the existence of his or her criminal history used to determine one's sentence in a collateral attack filed years after a

16

conviction, as Thomas does now, not only flies in the face of *Dickey*'s unambiguous language but also is unbounded by the procedures that should govern such a challenge.

*Thomas admitted his criminal history*

It is uncontested that Thomas did not notify the court of any error in his criminal history worksheet upon receiving it or at sentencing. Thomas' criminal history was proved not by the State's meeting its burden of proof by a preponderance of the evidence, but by Thomas' admission.

Additionally, Thomas, through counsel, affirmatively admitted Thomas' prior crime of "burglary of a building used as a dwelling" in arguing his motion for a downward departure, saying,

> "that he was age 17 at the time of the commission of this crime but tried as an Adult by reason of his other juvenile record, to-wit: a) Burglary of a building used as a dwelling, committed as a juvenile, convicted on February 27, 1990, age 16 at the time of the commission."

Dickey *bars a post-sentencing challenge to the existence of convictions listed in the PSI*

Our Supreme Court recently reaffirmed application of the invited error doctrine in *State v. Dickey*, 301 Kan. 1018, 1032, 350 P.3d 1054 (2015). After reviewing the line of cases examining whether a criminal defendant should be bound by his or her counsel's stipulation of fact in the district court with respect to his criminal history, *Dickey* found:

> "It appears that the legal reasoning of *Neal* and *Weber* is more sensible than the line of cases holding that a defendant waives a subsequent challenge to the classification of prior convictions or to his or her criminal history score if he or she stipulated or failed to object to the classification or score at sentencing. *As Weber indicates, a defendant's*

17

*stipulation or failure to object at sentencing will prevent the defendant from later challenging the existence of convictions listed in his or her criminal history.* But a stipulation or lack of an objection regarding how those convictions should be classified or counted as a matter of law for the purpose of determining the defendant's criminal history score will not prevent a subsequent challenge under K.S.A. 22-3504(1) of his or her prior convictions. *Weber*, 297 Kan. at 814-15. Accordingly, to the extent that *Vandervort*, *Goeller*, and *McBride* stand for the proposition that a legal challenge under K.S.A. 22-3504(1) is waived if the defendant stipulated or failed to object at sentencing to the classification of prior convictions or the resulting criminal history score, those cases are specifically overruled." (Emphasis added.) *Dickey*, 301 Kan. at 1032.

Under the plain language of this holding, Thomas' "failure to object at sentencing will prevent [him] from later challenging the existence of convictions listed in his . . . criminal history." 301 Kan. at 1032. Thomas' failure to object at sentencing prevents him from now challenging the existence of his conviction for "Burglary (Building Used As a Dwelling)," which was listed in his criminal history.

Dickey*'s facts are distinguishable*

The facts in *Dickey* are distinctively different from those in this case. In *Dickey*, the defendant's PSI listed a 1992 juvenile adjudication for "burglary" which the court services officer (CSO) had scored as a person felony, evidencing the CSO's conclusion that the burglary involved a "dwelling."

"A PSI report was prepared prior to the hearing showing that Dickey had 55 prior convictions, including 3 person felonies, 12 nonperson felonies, and 40 nonperson misdemeanors. The individual who prepared the PSI report designated Dickey's criminal history score an 'A' based on the finding that Dickey had three prior adult convictions or juvenile adjudications for person felonies. See K.S.A. 2014 Supp. 21-6809 (offender falls into criminal history category A when offender's criminal history includes three or more adult convictions or juvenile adjudications for person felonies, in any combination). One

18

of the three offenses scored as a person felony was a 1992 juvenile adjudication for burglary, which occurred prior to the enactment of the KSGA and the classification of crimes in Kansas as either person or nonperson.

"Under K.S.A. 2014 Supp. 21-6811(d), in order to classify the 1992 burglary adjudication as a person felony, the person who prepared the PSI would have had to conclude that the 1992 burglary involved a 'dwelling,' which is defined as 'a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home, or residence.' K.S.A. 2014 Supp. 21-5111(k)." *Dickey*, 301 Kan. at 1022.

Thus, in *Dickey*, there was a missing link between the prior crime listed on the defendant's PSI (burglary) and the conclusion stated on the PSI (burglary was a person felony) that required the district court to fill in the blank with unproven facts (the burglary involved a dwelling). See *Dickey*, 301 Kan. at 1033-34.

*Thomas is making a post-sentencing challenge to the existence of convictions listed in his PSI*

No such missing link exists in this case. Thomas admitted the existence of the prior crime listed on his PSI (burglary used as a dwelling) which compelled the legal conclusion stated on his PSI (burglary was a person felony). The district court did not engage in any factfinding.

Thomas has admitted to the crime of "burglary of a dwelling" in his PSI. Dickey did not. Dickey challenged the scoring of his conviction for "burglary," or its legal effect, but did not challenge the existence of the crime listed on his PSI, as Thomas does. Although Dickey's challenge regarding how his burglary conviction should be classified or counted as a matter of law for the purpose of determining his defendant's criminal history score was not barred by his failure to object at sentencing, Thomas' challenge to

the existence of a conviction listed in his criminal history is barred under *Dickey*'s plain language.

Dickey*'s holding means what it says*

*Dickey*'s holding that "a defendant's stipulation or failure to object at sentencing will prevent the defendant from later challenging the existence of convictions listed in his or her criminal history" is not mere dicta—that language made a distinction necessary to the issue being decided in *Dickey* and was the resolution of the court's extensive analysis of its prior cases applying the invited error doctrine. 301 Kan. at 1032.

That holding is not mere surplusage—instead, those words mean what they plainly say. It is a cardinal rule of statutory construction that a provision should not be interpreted as to render some language mere surplusage. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106 (2013). That same rule should apply to our interpretation of Supreme Court holdings—the justices mean something when they choose which words to use in drafting their opinions, as do legislators when they draft statutes. Just as reliance on the plain and unambiguous language of a statute is "the best and only safe rule for determining the intent of the creators of a written law," reliance on the plain and unambiguous language of a controlling decision is best. *State v. Spencer Gifts, LLC*, 304 Kan. 755, 761, 374 P.3d 680, 686 (2016). If *Dickey*'s italicized language does not apply to these facts, it is meaningless.

*Dickey*'s holding that "a defendant's stipulation or failure to object at sentencing will prevent the defendant from later challenging the existence of convictions listed in his or her criminal history" is unremarkable, as our Supreme Court's invited error or waiver jurisprudence has traditionally distinguished between stipulating to a fact, which bars a later challenge to the existence of that fact, and stipulating to the legal effect of a fact,

which does not bar a later challenge. See *State v. Weber*, 297 Kan. 805, 814, 304 P.3d 1262 (2013) (agreeing that "Weber should be bound by his counsel's stipulation of fact in the district court with respect to his criminal history, *i.e.*, the factual stipulation that Weber was convicted in Michigan of the crime of assault with intent to commit criminal sexual contact in the second degree," but finding that factual stipulation did not bar a challenge to "the *legal effect* of that prior conviction on the imposition of an enhanced sentence"); *State v. Goeller*, 276 Kan. 578, 585, 77 P.3d 1272 (2003) (citing *Vandervort* for the general rule that a defendant who invites error by stipulating to his or her criminal history cannot request a correction of sentence under K.S.A. 22-3504 after pronouncement of the sentence, but noting that generally, an appellate court has jurisdiction to consider whether the district court erred in determining the appropriate classification of the defendant's prior convictions); *State v. Vandervort*, 276 Kan. 164, 175-76, 72 P.3d 925 (2003) (recognizing the "general rule" that a defendant who invites error by stipulating to his or her criminal history cannot request a correction of sentence under K.S.A. 22-3504 after pronouncement of the sentence, but finding the Court of Appeals had erroneously refused to consider defendant's challenge to his criminal history classification on appeal).

This court has done the same. See *State v. McBride*, 23 Kan. App. 2d 302, 304, 930 P.2d 618 (1996) ("[The defendant] stipulated to his criminal history during sentencing; he cannot now complain that it was incorrect. Such argument has been waived."); *State v. Donaldson*, 35 Kan. App. 2d 540, 543-44, 133 P.3d 154 (2006) (distinguishing between a stipulation to the factual basis for the defendant's criminal history classification and a stipulation to its legal effect); *State v. Ruiz*, 51 Kan. App. 2d 212, 230-31, 343 P.3d 544 (2015) (citing cases and stating "we agree with the State that Weber should be bound by his counsel's . . . factual stipulation that Weber was convicted in Michigan of the crime of assault with intent to commit sexual contact in the second degree. But that factual stipulation does not answer the question . . . [of] the *legal effect* of that prior conviction on the imposition of an enhanced sentence").

21

Hankins *is distinguishable*

*State v. Hankins*, 304 Kan. 226, 372 P.3d 1124 (2016), did not hold otherwise, as the issue there was whether a crime listed in the PSI, which was later asserted to be a deferred judgment, was or was not a conviction under Kansas law.

> "In conclusion, we hold that under Kansas law, the entry of a judgment of guilt by the foreign court is necessary to meet this State's definition of a conviction. Under the Oklahoma deferred judgment procedure, a judgment of guilt was never lawfully entered upon Hankins' plea of guilty, and, therefore, he did not have a conviction for purposes of calculating a criminal history score in this State. Hankins' sentence is vacated, and the matter is remanded for resentencing with the proper criminal history classification." *Hankins*, 304 Kan. at 238-239.

*Hankins* thus did not overrule *Dickey*, but sought to apply it to facts unlike those in this case. The difference between a deferred judgment and a conviction involves a legal conclusion; whether a defendant has been convicted of burglary of a dwelling under the circumstances presented in this case does not.

*Applying* Dickey*'s holding does not offend* Apprendi.

This common sense interpretation of *Dickey*'s plain language is consistent with *Apprendi*. *Apprendi* requires that any fact that increases the penalty for a crime beyond the statutory maximum, *except the fact of a prior conviction*, must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

> "The policy rationale behind *Apprendi* is that a court violates the United States Constitution if it invades the jury's territory by finding facts at sentencing. See *Shepard v.*

*United States*, 544 U.S. 13, 25, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (plurality opinion) ('[T]he Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the State, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence.'). A narrow exception exists for judicial factfinding regarding the existence of a prior conviction because of the procedural safeguards which attach to such a fact. *Apprendi*, 530 U.S. at 488. As a result, in the typical case under our sentencing guidelines, tabulating a defendant's prior convictions to determine the criminal history score, which usually has the effect of increasing a defendant's sentence, does not violate a defendant's jury trial rights. See *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002)." *Dickey*, 301 Kan. at 1036.

Thomas challenges only the fact of his prior conviction. As *Dickey* found, *Apprendi* is implicated when a district court, for purpose of increasing the statutory maximum sentence for a current conviction, "makes findings of fact at sentencing that go beyond merely finding the existence of a prior conviction" or the statutory elements that made up the prior conviction. *Dickey*, 301 Kan. at 1036 (citing *Descamps v. United States*, 570 U.S.__, 133 S. Ct. 2276, 2288-89, 186 L. Ed. 2d 438 [2013]). *Apprendi* exempts "the fact of the prior conviction" from its requirement that facts increasing the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. 466. See *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002) (citing favorably the reasoning that any due process or Sixth Amendment concerns arising out of the judicial determination of a "fact" that increased punishment beyond the statutory maximum were mitigated in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 [1998], by both the certainty that procedural safeguards are attached to any fact of prior conviction, and the reality that the defendant did not challenge the accuracy of that fact in his case).

The "'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d

403 (2004). See *State v. Soto*, 299 Kan. 102, 119, 322 P.3d 334 (2014) (noting the Supreme Court's holding "that any additional facts necessary to increase the punishment for a crime beyond the maximum punishment a judge could impose based solely on the facts reflected in the jury verdict *or admitted by the defendant* must be submitted to a jury and proven beyond a reasonable doubt" [Emphasis added.]). Thomas admitted the fact of his prior conviction for "Burglary (Building Used As a Dwelling)," by not disputing that portion of his criminal history pursuant to the procedures established in K.S.A. 21-4715.

The district court did not make a factual finding as to whether Thomas committed the burglary of a dwelling in 1990—Thomas admitted he had. The district court did not make any finding at sentencing that went beyond merely finding the existence of that prior conviction for "Burglary (Building Used As a Dwelling)."

I would affirm.